Dear Honorable Boyd K. Rutherford
At the request of the Board of Public Works ("BPW"), you have asked for our opinion concerning the procedures that govern the State's procurement of architectural and engineering services. In particular, you asked whether the General Professional Services Selection Board ("General Selection Board") may request price proposals from more than one firm at a time when it negotiates contracts for architectural and engineering services.
The General Selection Board must follow a specific process set forth in the State procurement law to negotiate contracts for architectural and engineering services. With one exception related to indefinite quantity contracts, that process does not permit the General Selection Board to consider more than one price proposal at a time. Under that law, the General Selection Board must first evaluate technical proposals and qualifications of competing firms. Once it has ranked the firms on that basis, the General Selection Board is to obtain a price proposal from the top-ranked firm and attempt to negotiate an agreement. If the negotiations do not result in an agreement, it is to obtain a price proposal and attempt to negotiate an agreement with other firms, one at a time, in the order that they are ranked. Thus, under State law, the General Selection Board is to negotiate with only one firm at a time and to obtain a price proposal from only one firm at a time. It would be inconsistent with the process set forth in the State procurement law for the General Selection Board to obtain a price proposal from at a firm at a time when the law does not permit it to negotiate with that firm.
I
State Procurement Law
The State procurement law and regulations govern the procurement of architectural and engineering services by most State agencies. Annotated Code of Maryland, State Finance 
Procurement Article ("SFP"), § 13-301 et seq.; COMAR 21.12.01. The procurement law establishes the General Selection Board to negotiate such contracts on behalf of the Department of General Services, and sets forth the procedures for those negotiations. SFP § 13-302, 13-308.[1] It also requires the General Selection Board to adopt regulations that ensure that a recommendation to the BPW for the award of a procurement contract for architectural and engineering services costing over $200,000 is made on a competitive basis and includes an evaluation of the technical proposals and qualifications of at least two firms.[2] SFP § 13-304.
If an agency requires architectural or engineering services that cannot be provided in-house, it may submit a request to the General Selection Board to procure those services. SFP § 13-306; COMAR21.12.04.09. If the General Selection Board approves the request, it announces the procurement and provides interested firms with a comprehensive description of the nature and scope of required services. SFP § 13-307; COMAR 21.12.04.10.
SFP § 13-308 and COMAR 21.12.04.12 set forth the process for the selection of a contractor and the negotiation of a contract for those services. The General Selection Board is required to evaluate technical proposals and qualifications of competing firms and determine an order of priority, without consideration of price. SFP § 13-308(a).[3] Once the ranking is established, the General Selection Board is required to request a price proposal from the firm ranked most qualified and to try to negotiate a contract with that firm. SFP § 13-308(b); COMAR 21.012.04.12E(1).[4] As part of those negotiations, the candidate firm is to submit a detailed price proposal. COMAR 21.12.04.12I. If the negotiations are unsuccessful, the General Selection Board is required to terminate negotiations with that firm and enter into negotiations with the next-most-qualified firm, which then provides its price proposal. SFP § 13-308(c); COMAR 21.12.04.12H-K.
The statute directs the General Selection Board to negotiate a rate of compensation that is "fair, competitive, and reasonable." SFP § 13-308(b)(1)(ii). In determining the rate of compensation, the General Selection Board is to consider the scope and complexity of the services required and to conduct a detailed analysis of the cost of those services. SFP § 13-308(b)(2), COMAR 21.12.04.12H(1).
The regulations establish a modified procedure for what are called "indefinite quantity contracts" — i.e., the contract does not relate to a specific project, but is for an indefinite amount of services during the contract period, to be furnished at specified times or as ordered, at a fixed or unit price. See COMAR 21.06.03.06A(2) (definition of "indefinite quantity contract").[5] In that case, the regulations contemplate that the General Selection Board may select multiple firms based on technical proposals and qualifications, and then simultaneously negotiate a contract with each of those firms. COMAR 21.12.04.10-1. Accordingly, the General Selection Board may obtain price proposals from those firms at the same time, and simultaneously negotiate with each of them to independently determine a rate that is fair, competitive, and reasonable for each firm. COMAR 21.12.04.12C(13), D(2), E(2), H(2), (4). Other procedures govern the later award of work to the successful firms, depending on whether the particular assignment is likely to involve fees exceeding $200,000. COMAR 21.12.04.13-2. The award of an indefinite quantity contract does not guarantee that a firm will actually receive any work. COMAR 21.12.04.13-4.
II
Analysis
The General Assembly has created a separate and distinct method for the procurement of professional services from architects and engineers. Whereas the selection of contractors for most other types of goods and services is based, at least in part, on price competition among potential contractors, the process created by the procurement law excludes direct price competition for professional services of architects and engineers. After ranking competing firms based on technical proposals and qualifications, without consideration of price, the General Selection Board is required to request a price proposal from, and to try to negotiate a fair, competitive, and reasonable rate of compensation with, the firm ranked most qualified. If unsuccessful, the General Selection Board is to terminate negotiations with that firm and initiate negotiations with the next-most-qualified firm in the same manner — that is, the Board obtains a price proposal from the second ranked firm and attempts to negotiate a fair, competitive, and reasonable rate of compensation without consideration of the price proposals submitted by other firms. It would be inconsistent with this process if the General Selection Board were to obtain a price proposal from a firm at a time when the law does not permit it to negotiate with that firm.
The legislative history of this portion of the procurement law confirms that the General Assembly intended to eliminate direct price competition in the procurement of architectural and engineering services. The General Selection Board was originally created in 1974 as part of an effort to reform State procurement practices. Chapter 732, Preamble, Laws of Maryland 1974.[6]
Previous practices had resulted in various abuses leading, among other things, to the conviction and resignation of Vice-President and former Governor Spiro T. Agnew. As originally enacted, the law required the consideration of both technical and price proposals from competing firms prior to an award of a contract for architectural or engineering services. See Annotated Code of Maryland, Article 41, §§ 231-O, 231P (1971 Repl. Vol., 1974 Cum. Supp.). Thus, firms competed on the basis of both price and technical qualifications.
In 1985, bills were introduced to modify this law in several respects, including the elimination of direct price competition. House Bill 126/Senate Bill 311 (1985). These amendments were supported by the State Department of Transportation and the Department of General Services, as well as the architectural and engineering communities. The proponents of the bills stated that the system created by the 1974 law had resulted in lengthy delays in the awarding of contracts and that a system of competitive negotiation would better allow the State to refine the scope and nature of the project during the procurement process. See, e.g., DOT Testimony concerning Senate Bill 311/House Bill 126 (March 5, 1985); Letter of Engineers Council of Maryland, Inc. (March 1, 1985). The legislative files reveal that the proposal spurred vigorous opposition from those who argued that elimination of direct price competition removed a market-based check on the reasonableness of a price and would signal a return to past abuses. See, e.g., Statement by County Executive J. Hugh Nichols on SB 311 (February 28, 1985); Letter of National Institute of Government Purchasing (February 27, 1985). Without revisiting the merits of the opposing arguments, suffice it to say that the General Assembly sided with the proponents of the measure and enacted amendments to eliminate the requirement that the General Selection Board obtain multiple price proposals and to substitute the current system of negotiation.
The current law does not require the General Selection Board to ignore cost and price factors in negotiating a contract for architectural or engineering services. Indeed, the statute requires the General Selection Board to negotiate a rate of compensation that is "fair, competitive, and reasonable." SFP § 13-308(b)(1)(ii). To accomplish that goal, the General Selection Board is to undertake a cost analysis of a proposal. SFP § 13-308(b)(2). In doing so, the General Selection Board inevitably relies on price and cost information from various sources.[7] In effect, there is indirect price competition, in that a price proposal will be assessed by reference to rates determined by the General Selection Board to be fair, competitive, and reasonable. However, it would be antithetical to the negotiation process required by the statute to obtain a specific price proposal from one of the competing firms before the statute authorized negotiations with that firm.
III
Conclusion
For the reasons set forth above, the General Selection Board must follow the process required by the State procurement law when it negotiates contracts for architectural and engineering services. With one exception related to indefinite quantity contracts, that process does not permit the General Selection Board to consider more than one price proposal at a time. Rather, when it is negotiating for services related to a specific project, it is to negotiate with firms sequentially, in the order in which they are ranked on a technical basis. The General Selection Board may request and consider a price proposal only from the firm with which it is negotiating at the time of the request.
J. Joseph Curran, Jr. Attorney General
Julia Paschal Davis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The statute also creates the Transportation Professional Services Selection Board ("Transportation Selection Board") for the procurement of architectural and engineering services by State transportation units. SFP §§ 13-303, 13-311. The General Selection Board and the Transportation Selection Board are required to adopt regulations that provide substantially similar procedures. SFP § 13-304(a).
[2] The statute refers to a candidate for architectural and engineering professional service contracts as a "person," while the regulations refer to a candidate under consideration by the General Selection board as a "firm." In this opinion, we use the term "firm" for simplicity.
[3] A Qualification Committee consisting of engineers or architects employed by the State makes an initial review and ranking that is submitted to the General Selection Board for its consideration. COMAR21.12.04.11, .12C.
[4] The Administrator notifies each of the remaining candidates of its ranking and its right to file objections with the General Selection Board. COMAR 21.12.04.12D(1)(b).
[5] The regulations of the Transportation Selection Board provide for a similar modified procedure for "open-end contracts." Such contracts are "identical in nature and scope of services" where the work is to be performed "in the same defined geographical area." In this case, "two or more contracts may be awarded from a single reduced candidate list." COMAR 21.12.02.10B(2). However, as with the General Selection Board, the evaluation of technical proposals is concluded without consideration of price. Once this evaluation process is concluded, "negotiations may be conducted simultaneously with two or more of the firms which have submitted the highest rated technical proposals." COMAR 21.12.02.111(3)(b).
[6] The Transportation Selection Board was also created by that law.
[7] Under contract cost principles and procedures adopted by the BPW, a cost is reasonable "if, in its nature or amount, it does not exceed that which would be incurred by an ordinarily prudent person in the conduct of competitive business in that industry." COMAR21.09.01.04A. Compensation for personal services is reasonable "to the extent that the total amount paid or accrued is commensurate with compensation paid under the contractor's established policy and conforms generally to compensation paid by other firms of the same size, in the same industry, or in the same geographic area, for similar services." COMAR 21.09.01.16. *Page 212